UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HILLSIDE PLASTICS, INC., | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
|        v. | ) |
| | ) Civil Action No. 3:17-cv-30037-MGM |
| | ) |
| DOMINION & GRIMM U.S.A., INC., and | ) |
| DOMINION & GRIMM, INC., | ) |
| | ) |
|     Defendants | ) |

REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS
(Dkt. No. 46)

ROBERTSON, U.S.M.J.

I.     INTRODUCTION

Plaintiff Hillside Plastics, Inc. ("Plaintiff") produces and sells blow-molded plastic jugs for maple syrup and owns the trademark registration for the design of its "Sugarhill Jug." Plaintiff alleges that by manufacturing and offering for sale blow-molded plastic jugs for maple syrup which feature its Sugarhill Jug's registered trade dress, Defendants Dominion & Grimm U.S.A., Inc. and Dominion & Grimm, Inc. ("Defendants") have violated the federal and Massachusetts unfair competition statutes, 15 U.S.C. § 1052 et seq. and Mass. Gen. Laws ch. 93A, §§ 2, 11. Plaintiff seeks injunctive and other relief.

Defendants have moved for judgment on the pleadings claiming that the registration of Plaintiff's trade dress is invalid (Dkt. No. 46). The motion has been referred to the undersigned for a report and recommendation. *See* 28 U.S.C. §636(b)(1)(b); Fed. R. Civ. P. 72. After hearing from the parties, the undersigned recommends that Defendants' motion be DENIED for the reasons detailed below.

1

II.   FACTS AND PROCEDURAL HISTORY

Because Defendants have moved for judgment on the pleadings under Fed. R. Civ. P.

12(c), the facts are recited in the light most favorable to Plaintiff and all inferences therefrom are

drawn in its favor.[1]  *See Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006).

Plaintiff is a prominent manufacturer of containers used by the household, automotive,

industrial, and food and beverage industries (Dkt. No. 1 ¶¶ 8, 12, 13).  Plaintiff alleges that it has

"invested considerable time, money and effort in designing" its Sugarhill Jug, including making

"significant investment in molds for the manufacture of its unique and distinctive design . . . "

(*id.* ¶ 10).  Since at least June 1980, Plaintiff has produced, marketed, and sold millions of its

Sugarhill Jugs to wholesale bottlers, food distributors, and maple syrup producers (*id.* ¶¶ 9, 10,

---

[1] The facts are taken from the complaint, Dkt. No. 1, its exhibits, Dkt. Nos. 1-1, 1-2, and 1-3, materials for which the parties have requested judicial notice, and other documents the parties argue are sufficiently incorporated by reference into the pleadings.  As with a Rule 12(b)(6) motion, a court addressing a Rule 12(c) motion is permitted to consider "'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'"  *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 665 (D. Mass. 2016) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  Defendants have asked the court to take judicial notice of the following U.S. Patent and Trademark Office ("USPTO") records and Plaintiff has agreed that they may be considered:  Plaintiff's 1982 trademark application and registration on the Supplemental Register (Dkt. No. 48-2); Plaintiff's 1989 trademark application and registration on the Principal Register; and Plaintiff's 1996 application for trademark renewal (Dkt. Nos. 48-1, 48-3, 48-4).  Defendants also submitted a portion of their 2017 catalogue depicting their redesigned maple syrup jugs (Dkt. No. 48-5), and an excerpt from the transcript of a motion hearing held before District Court Judge Michael A. Ponsor on September 21, 2017 (Dkt. No. 48-6).  Plaintiff has submitted an excerpt of the transcript of the scheduling conference that was held before the undersigned on October 31, 2017 (Dkt. No. 55-1), and the following USPTO records:  the prosecution history for its 1989 trademark application (Dkt. No. 55-2); the Combined Declarations of Use in Commerce/Applications for Renewal of Registration of Mark submitted on or about March 16, 2000 (Dkt. No. 55-3), and on or about July 13, 2009 (Dkt. No. 55-4); the USPTO's notice of acceptance mailed on July 27, 2009 (Dkt. No. 55-5); and fourteen USPTO trademark status reports for various bottles and containers (Dkt. No. 55-6).  Defendants have not objected to the court's reliance on these documents.  Without objection from Plaintiff, Defendants also have submitted:  photographs of various sizes of their redesigned jugs side-by-side with Plaintiff's jugs of comparable sizes (Dkt. No. 58-2); and Defendants' 2017 online catalog depicting their redesigned jugs (Dkt. No. 58-3).

11).  In 2016, sales of the Sugarhill Jug exceeded $10 million (*id.* ¶ 11).  According to Plaintiff, "[c]onsumers have come to recognize and associate the Sugarhill . . . Jug Design Trademark with Plaintiff and it has acquired secondary meaning in the marketplace " (*id.* ¶ 11).

A.   Registration of Plaintiff's Sugarhill Jug Trade Dress

On September 28, 1982, Plaintiff filed an application to register its Sugarhill Jug design on the USPTO's Principal Register (Dkt. No. 48-2 at 2, 12).  The USPTO initially refused registration because there was no evidence that the design had become distinctive or had secondary meaning and because "the configuration [of the container] appear[ed] to be primarily functional in nature" (*id.* at 15).  In her decision refusing registration, the USPTO examining attorney described the jug as follows:  "[A] container shaped like a table pitcher or jug.  The container has a handle and screw-on-cap which prevents the contents from spilling.  The narrower neck opening on the bottle serves to reduce the flow of the contents, so that pouring the syrup from the bottle to another container is more easily regulated" (*id.*).  Plaintiff amended its application by clarifying that the lining and/or stippling on the submitted drawing of the cap "show[ed] a design feature," and by deleting the color "almond" from the application because the USPTO did not recognize it (*id.* at 12-14).  This left "silver (grey) as an essential and distinguishing feature of the design" (*id.*).  After reconsideration of the amended application, the USPTO registered Plaintiff's "Sugarhill Jug Design Trademark" on the Supplemental Register on March 20, 1984 (Registration No. 1271312) (*id.* at 2, 4).

Approximately five years later, on June 23, 1989, Plaintiff applied to the USPTO to register its "Sugarhill Jug Design Trademark" on the Principal Register (Dkt. No. 1 ¶ 14; Dkt. No. 48-1 at 2-3).  On September 13, 1989, the examining attorney refused registration "because the proposed mark appears to be functional in that it consists of a design feature of the identified

goods which serves a utilitarian purpose" (Dkt. No. 48-4 at 43).  In response, Plaintiff submitted advertising and promotional materials referring to the Sugarhill Jug's "distinctive shape," indicated that alternative designs were available for plastic maple syrup jugs, and included advertisements of two "prime competitors," Kress Creations, Inc. and The Bacon Jug Company (Dkt. No. 48-3 at 31, 34-35, 41, 46; Dkt. No. 48-4 at 6, 38, 40, 41, 43-44).

The examining attorney also refused registration on the Principal Register on the ground that the proposed mark was not "inherently distinctive" (Dkt. No. 48-4 at 45).  However, he invited Plaintiff to submit evidence of the proposed mark's "acquired distinctiveness, that is, that [the mark's specific features have] acquired distinctiveness as a source indicator for the identified goods" (*id.*).  To demonstrate acquired distinctiveness or secondary meaning, Plaintiff provided: advertisements and promotional materials that referenced the jug's distinctive shape; sales figures for 1980 through 1989 showing an increase in sales every year; and twenty-seven letters from maple syrup producer customers and maple syrup trade associations indicating that they associated "the distinctive shape of [Plaintiff's] jug design" with Plaintiff (Dkt. No. 48-3 at 32-34, 46; Dkt. No. 48-4 at 8-34).  On July 10, 1990, upon reconsideration, the USPTO accepted Plaintiff's design of its Sugarhill Jug for registration on its Principal Register (Dkt. No. 48-1 at 2-3).

The registration described the products as "blow molded plastic jugs for commercial use, sold empty" (Trademark Registration No. 1605584) ("the Mark") (Dkt. No. 1 ¶ 14; Dkt. No. 48-1 at 2-3).  This is the registered mark of Plaintiff's Sugarhill Jug (hereinafter "**Exhibit A**"):



(Dkt. No. 1 ¶ 15; Dkt. No. 48-1 at 2).  The registration indicated that "the drawing is lined for the

colors silver or gray; the lining of the jug cap is claimed as a feature of the mark" (Dkt. No. 48-1

at 2).  Plaintiff's mark has been in continuous use since its registration and, consequently, it has been rendered incontestable under the Lanham Act (Dkt. No. 1 ¶ 16; Dkt. No. 55-5 at 2).

B.   Defendants' Maple Syrup Jug

Defendants produce and sell maple sugaring equipment and accessories, including blow-molded plastic jugs (Dkt. No. 1 ¶ 18; Dkt. No. 1-2 at 2).  Their products are "offered to the same customers through the same channels of trade" as Plaintiff's Sugarhill Jugs (Dkt. No. 1 ¶ 22).  "For a number of years and continuing to this day," Defendants have purchased and sold Plaintiff's Sugarhill Jugs (Dkt. No. 1 ¶¶ 18, 19).

In 2016, Defendants began offering for sale the blow-molded plastic jugs that Plaintiff alleges infringed upon its Sugarhill Jug Mark ("allegedly infringing jugs") (Dkt. No. 1 ¶¶ 18, 22, 23; Dkt. No. 23 at 11 ¶ 16).  Plaintiff claims that Defendants contracted with Salbro Bottle, Inc. ("Salbro") to manufacture the allegedly infringing jugs "according to specifications that Defendants provided to Salbro" (Dkt. No. 1 ¶ 18).  The following portion of Defendants' catalog, which depicts their allegedly infringing jugs, was included in the complaint (hereinafter "**Exhibit B**"):



(Dkt. No. 1 ¶ 21).  Plaintiff's complaint also included a copy of a portion of Defendants' 2017

product catalog that depicts Defendants' allegedly infringing jugs sharing the same page as

Plaintiff's Sugarhill Jugs (hereinafter **"Exhibit C"**):



## JUGS

**PACKAGING**

AGAIN THIS YEAR DOMMINION GRIMM USA INC. WILL GIVE 1 PENNY FOR EACH JUG AND TIN CAN SOLD IN THE USA TO THE NORTH AMERICAN MAPLE SYRUP COUNCIL FOR RESEARCH IN THE MAPLE INDUSTRY.

**PRIVATE PRINTED JUGS ALSO AVAILABLE**

**NEW!**

OTHER STATES AVAILABLE UPON REQUEST



### PLASTIC JUGS
Nutrition facts included. Caps not included

| | Capacity | All State | Vermont | New York | Maine | New Hampshire | Qty/Box | Price |
|---|---|---|---|---|---|---|---|---|
| A | 3.4oz | 506000 | 505835 | 505706 | 505607 | 505508 | 100 | $0.98 |
| B | ½ Pint | 506017 | 505812 | 505713 | 505614 | 505515 | 100 | $1.10 |
| C | Pint | 506024 | 505829 | 505720 | 505621 | 505522 | 100 | $1.14 |
| D | Quart | 506031 | 505836 | 505737 | 505638 | 505539 | 100 | $1.34 |
| E | ½ Gallon | 506048 | 505843 | 505744 | 505645 | 505546 | 50 | $1.71 |
| F | Gallon | 506055 | 505850 | 505751 | 505652 | 505553 | 24 | $2.24 |

### TAMPER EVIDENT CAPS FOR JUGS (NOT SHOWN)

| Code | Description | Qty/Box | Price |
|---|---|---|---|
| 590559 | 28 mm (TE) brown | 2300 | $0.12 |
| 590542 | 28 mm (TE) red | 2300 | $0.12 |
| 590443 | 38 mm (TE) brown | 1600 | $0.18 |
| 589942 | 38 mm (TE) red | 1600 | $0.18 |

### RESHIPPING BOXES FOR JUGS (NOT SHOWN)

| Code | Description | Qty/Box | Price |
|---|---|---|---|
| 450570 | 24 x 100ml | 25 | $1.36 |
| 450600 | 12 x 250ml | 25 | $0.90 |
| 450631 | 12 x 500ml | 25 | $1.44 |
| 450693 | 12 x 1 Litre | 25 | $1.76 |
| 450723 | 6 x 2 Litres | 25 | $1.74 |
| 450716 | 4 x 4 Litres | 25 | $1.99 |



sugarhill



### SUGARHILL PLASTIC JUGS (3 COLORS)
Nutrition facts and caps included.

| | Capacity | All State | Vermont | New York | Maine | Qty/Box | Price |
|---|---|---|---|---|---|---|---|
| G | 3.4oz | 501814 | 501838 | 501821 | 492136 | 100 | $1.10 |
| H | ½ Pint | 501845 | 501869 | 501852 | 492129 | 100 | $1.20 |
| I | Pint | 501876 | 501890 | 501883 | 492112 | 100 | $1.35 |
| J | Quart | 501906 | 501920 | 501913 | 492105 | 75 | $1.50 |
| K | ½ Gallon | 501937 | 501951 | 501944 | 492099 | 32 | $1.95 |
| L | Gallon | 501968 | 501982 | 501975 | 492082 | 24 | $2.44 |

### SUGARHILL TAMPER EVIDENT CAPS FOR JUGS (NOT SHOWN)

| 590856 | 28 mm RATCHET STYLE (brown) | $0.12 |
|---|---|---|
| 590849 | 38 mm RATCHET STYLE (brown) | $0.12 |

### SUGARHILL MAPLE CREAM TUBS

| Code | Description | Capacity | Qty/Box | Price |
|---|---|---|---|---|
| M | 491528 | Maple Crm. All State | ½ lb | 1500 | $1.35 |
| N | 491665 | Maple Crm. All State | 1 lb | 1500 | $1.55 |
| | 490880 | Cap only | ½ lb | 100 | $0.20 |
| | 490866 | Cap only | 1 lb | 100 | $0.35 |

Please note that all prices are subject to change.

(Dkt. No. 1 ¶ 22; Dkt. No. 1-2 at 2-3).  Plaintiff avers that Defendants were "well aware that the Sugarhill Jug Design Trademark [was] widely recognized and relied upon by the public and the trade as identifying Plaintiff and its product and as distinguishing said products from the products of others" (Dkt. No. 1 ¶ 19).

      C.    The Present Litigation

In response to Plaintiff's demand letters, Defendants denied infringement but modified the design of their jugs ("old jugs") (Dkt. No. 23 at 11 ¶ 18).[2]  Thereafter, Defendants began producing jugs with the altered design ("new jugs") (Dkt. No. 47 at 13; Dkt. No. 58-2). Notwithstanding Defendants' alleged redesign of its old jugs, Plaintiff filed this suit on March 31, 2017 claiming violations of federal and state unfair competition laws by Defendants' old jugs (Dkt. No. 1).  On the same date, Salbro, which is not a party to this action, petitioned the Trademark Trial and Appeal Board ("TTAB") to cancel Plaintiff's registration for the Mark on the grounds that the claimed trade dress is purely functional (Dkt. No. 23 at 15 ¶ 33).  On June 7, 2017, Plaintiff moved to suspend the TTAB proceeding (Dkt. No. 23 at 15 ¶ 34).  On June 26, 2017, Defendants moved to stay this court's action pending the TTAB's adjudication (Dkt. No. 21).  After the TTAB granted Plaintiff's motion to suspend its action (Dkt. No. 23 at 15 ¶ 36), Defendants filed their counterclaim along with their answer to Plaintiff's complaint (Dkt. No. 23).  In their counterclaim, Defendants seek to invalidate Plaintiff's Sugarhill Jug's registered mark on the ground that it is functional (Dkt. No. 23 at 16 ¶¶ 39-45).

Defendants have moved for dismissal of all counts with prejudice (Dkt. No. 46), *see* Fed. R. Civ. P. 12(c), and have moved to stay discovery (Dkt. No. 49).  Plaintiff has opposed both

---

[2] Defendants aver that its old jugs were "never manufactured . . . or sold in the United States prior to the redesign" (Dkt. No. 47 at 13).

motions; Defendants have responded to Plaintiff's oppositions; and the undersigned heard the parties' arguments (Dkt. Nos. 53, 54, 57, 61). [3]

III.     ANALYSIS

A.     Standard of Review

"A Rule 12(c) motion implicates the pleadings as a whole." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007). "The applicable standard of review for a motion under Rule 12(c) 'is identical to the standard of review for motions to dismiss for failure to state a claim under Rule 12(b)(6).'" *Lopes*, 177 F. Supp. 3d at 664 (quoting *Jardin De Las Catalinas Ltd. P'ship v. Joyner*, 766 F.3d 127, 132 (1st Cir. 2014)). "Taking the facts in the complaint as true and drawing reasonable inferences in plaintiff's favor, the 'complaint must contain factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true."'" *Lopes*, 177 F. Supp. 3d at 664-65 (quoting *Perez–Acevedo v. Rivero–Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). *See Downing v. Globe Direct LLC*, 682 F.3d 18, 22 (1st Cir. 2012) ("complaint must allege '"enough facts to state a claim to relief that is plausible on its face"'") (quoting *Elena v. Municipality of San Juan*, 677 F.3d 1, 3 (1st Cir. 2012)). "'Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.'" *Lopes*, 177 F. Supp. 3d at 665 (quoting *Patrick v. Rivera–Lopez*, 708 F.3d 15, 18 (1st Cir. 2013)).

The parties are not clear as to which of Defendants' jugs the court should consider in deciding the Rule 12(c) motion. The claims in Plaintiff's complaint are directed at Defendants' old jugs, which are depicted therein and in the attached exhibits (Dkt. No. 1 ¶¶ 21, 22, 23; Dkt.

---

[3] Defendants' motion to stay discovery is addressed in a separate memorandum and order.

Nos 1-2, 1-3; Dkt. No. 53 at 11 & n.6). *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1171 (1st Cir. 1995) (the fundamental purpose of a pleading is to provide a party "fair notice of the claims asserted against him and the grounds on which those claims rest.").  Defendants answered specific allegations in the complaint by indicating that "they ceased using the accused jug design prior to the commencement of this action" and, thus the claims are moot (Dkt. No. 23 at 3-4 ¶¶ 18, 20, 24, 25).  Defendants also raised mootness as an affirmative defense (Dkt. No. 23 at 8 ¶ 63).  Notwithstanding Defendants' acknowledgement that their new jug design "has not yet been asserted in the litigation," Defendants have not moved to dismiss the complaint on the grounds that Plaintiff's claims are moot (Dkt. No. 47 at 13).  *Compare TV Globo LTDA v. Kelly Broad. Sys., Inc.*, No. 01 Civ. 5673(RO), 2001 WL 1537642, at *2 (S.D.N.Y. Dec. 3, 2001) (after the defendant withdrew an allegedly confusing advertisement and modified an allegedly infringing website's design, the court, in an action for injunctive relief, found the plaintiff's Lanham Act claim moot "so long as those changes remain in place"); *Brown v. Armstrong*, 957 F. Supp. 1293, 1302 n.8 (D. Mass. 1997) ("Plaintiff's claim for injunctive relief . . . is moot to the extent it is based on the infomercial because the infomercial stopped running in 1994, and there are no plans to air it in the future.").

For its part, Plaintiff has neither moved to amend its complaint to raise claims against Defendants' new jugs nor has it sought a declaratory judgment or moved for a preliminary injunction.  Plaintiff alleges that even if Defendant did not manufacture and sell its old jugs, they were advertised in February 2017 and depicted in its 2017 products' catalog and could be manufactured in the future (Dkt. No. 53 at 11 n.6).  Further, Defendants' contention that Plaintiff's Mark is invalid remains a live controversy on this record.  *See Classic Liquor Imps., Ltd. v. Spirits Int'l BV*, 201 F. Supp. 3d 428, 435, 438-39 (S.D.N.Y. 2016) (rejecting the "well-

established industry player"/defendant's argument that the court lacked jurisdiction over the alleged infringer/plaintiff's claim under the Declaratory Judgment Act for non-infringement of its vodka bottle design and use of its marks in general, where the plaintiff "redesigned its vodka bottle in the course of [the] litigation and is planning to discontinue its prior design;" the court held that "it would undermine the utility of the declaratory judgment procedure if a defendant could re-litigate infringement every time a product design was altered, regardless of how immaterially.").  Whether Defendants' new jugs are infringing, however, is not before the court at this point.  *See Friends of the Earth, Inc. v. Laidlaw Env'tl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000) ("It is well-settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'") (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982)); *Solar Cosmetics Labs, Inc. v. Sun-Fun Prods., Inc.*, 941 F. Supp. 1185, 1187 & n.1 (M.D. Fla. 1996) (where the defendant had changed its allegedly infringing product label, the court found the issue moot and the issue of trade dress infringement for the new product label was not before the court).[4]

  B.  <u>Plaintiff's Trade Dress under the Lanham Act</u>

    1.  Trade Dress Law

  "The Lanham Act provides for the registration of trademarks, which it defines in § 45 to include 'any word, name, symbol, or device, or any combination thereof [used or intended to be used] to identify and distinguish [the mark holder's] goods . . . from those manufactured or sold by others and to indicate the source of the goods . . . .'"  *Wal-Mart Stores, Inc. v. Samara Bros.,*

---

[4] Defendants' new jug design is not relevant to the analysis of the functionality of Plaintiff's Sugarhill Jug design, but the Defendants' new jug design could impact the Defendants' claim that its jugs are not likely to be confused with Plaintiff's Sugarhill Jugs.

*Inc.*, 529 U.S. 205, 209 (2000) (first alteration in original) (quoting 15 U.S.C. § 1127).  The Act

"extends protection not only to words and symbols, but also to 'trade dress,' defined as 'the design

and appearance of a product together with the elements making up the overall image that serves

to identify the product presented to the consumer.'"  *Yankee Candle Co. v. Bridgewater Candle*

*Co.,* 259 F.3d 25, 37–38 (1st Cir. 2001) (quoting *Chrysler Corp. v. Silva*, 118 F.3d 56, 58 (1st

Cir. 1997)).  "A product's trade dress 'is a complex composite of features' to be considered

together, including the product's size, shape, color and graphics."  *Maple Grove Farms of Vt.,*

*Inc. v. Euro-Can Prods., Inc.*, 974 F. Supp. 85, 88 (D. Mass. 1997) (citation omitted) (quoting

*Am. Greetings Corp. v. Dan-Dee Imps., Inc.*, 807 F.2d 1136, 1141 (3d Cir. 1986)).  "The federal

courts, including the Supreme Court, 'recognize trade dress claims based both on product

packaging and on "product design/configuration."'"  *Gurglepot, Inc. v. New Shreve, Crump &*

*Low LLC*, 153 F. Supp. 3d 441, 447 (D. Mass. 2015) (quoting *Yankee Candle Co.*, 259 F.3d at

37-38)).

  "A primary purpose of trade dress or trademark protection is to protect that which

identifies a product's source." *I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 35 (1st Cir.

1998) [hereinafter *Lund*].  *See Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 9 (1st

Cir. 1996) ("The purpose of trademark laws is to prevent the use of the same or similar marks in

a way that confuses the public about the actual source of the goods or service.") (citing *DeCosta*

*v. Viacom Int'l, Inc.,* 981 F.2d 602, 605 (1st Cir. 1992)); *Yankee Candle Co. v. Bridgewater*

*Candle Co.,* 99 F. Supp. 2d 140, 151 (D. Mass. 2000), *aff'd,* 259 F.3d 25 (1st Cir. 2001) ("In

essence, the Act protects the producer and the consumer from another's attempt to 'pass off' an

imposter product.").  "Prevention of confusion is thus the touchstone of trademark protection."

*Dorpan, SL v. Hotel Meliá, Inc.*, 728 F.3d 55, 61 (1st Cir. 2013).

13

Under the Act, an owner of a product design may apply to the USPTO to register the design on the Principal Register.  *See* 15 U.S.C. § 1051(a)(1).  An applicant is required to verify that the "mark is in use in commerce" and based on knowledge and belief that "no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1051(a)(3)(C), (D).  Only non-functional and distinctive marks are entitled to registration on the Principal Register.  *See* 15 U.S.C. § 1052(e)(4), (f); *see also Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 164-65 (1995) [hereinafter *Qualitex*]; *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)).  "Such federal registration 'serves as constructive notice to the public of the registrant's ownership of the [trade dress].'"  *Dorpan, SL*, 728 F.3d at 61 (quoting *In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1367 (Fed. Cir. 1999)).

This case concerns the trade dress of Plaintiff's Sugarhill Jug.  It is undisputed that the elements of the trade dress – the overall shape of the Sugarhill Jug as depicted in the drawing from the registration, including the protrusion under the cap and the location and design of the handle (*see* Exhibit A), combined with the silver-gray color, and the ridged cap (Dkt. No. 1 ¶ 15; Dkt. No. 1-1 at 2) -- are registered on the USPTO's Principal Register and have attained uncontestable status (Dkt. No. 1 ¶ 16; Dkt. No. 1-1 at 2).  Registration of trade dress under § 2 of the Lanham Act, 15 U.S.C. § 1052, enables the owner to sue an alleged infringer for violating its federal trademark rights.  *See Wal-Mart Stores, Inc.*, 529 U.S. at 209.  In Count I Plaintiff alleges that Defendants' unauthorized use of its registered trade dress constitutes infringement of a registered mark under § 32 of the Lanham Act, 15 U.S.C. § 1114(l)(a) (Dkt. No. 1 ¶¶ 27-32).  In

Count II, Plaintiff alleges that Defendants' infringement of its famous Sugarhill Jug trademark has caused "dilution of the distinctive quality" of the mark in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (*id.* ¶¶ 33-38).  By Count III, Plaintiff claims that Defendants' intentional use of the Sugarhill Jug design trademark constitutes a false designation of origin or a false or misleading description or representation of fact, which "is likely to cause confusion, or to cause mistake, or to deceive . . ." in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (*id.* ¶¶ 39-44).

"In order to form the basis for an action under the Lanham Act, a trade dress must satisfy three criteria:  1) it must be distinctive; 2) it must be nonfunctional; and 3) there must be a likelihood that it will be confused with the accused product."  *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir. 1994) (citing *Two Pesos, Inc.,* 505 U.S. at 769).  Defendants contend that Counts I, II, and III of the complaint fail to state viable Lanham Act claims because Plaintiff's trade dress is functional and, thus, invalid (Dkt. No. 57 at 1-2).  Defendants further maintain that to the extent that Plaintiff's Mark is non-functional, there is no likelihood that Defendants' jugs will be confused with Plaintiff's Sugarhill Jugs.  *See Yankee Candle Co.,* 259 F.3d at 38; *Lund*, 163 F.3d at 46 ("The requirements of commercial use, non-functionality, and distinctiveness are common to both the infringement claim and the FTDA dilution claim."); *Boustany v. Bos. Dental Grp., Inc.*, 42 F. Supp. 2d 100, 104–05 (D. Mass. 1999) ("To make out a claim under § 1125 of the Lanham Act, . . . the following things [must be proved]: '(1) the ownership of a distinctive mark entitled to trademark protection; (2) the use of that name in interstate commerce; and (3) its use by another in a manner likely to cause confusion as to the origin of the goods or services.'") (citing *Calamari Fisheries, Inc. v. Vill. Catch, Inc.,* 698 F. Supp. 994, 1006 (D. Mass. 1988)); *Kusan, Inc. v. Fairway Siding Corp.*, Civ. A. No. 87-0212-F,

1988 WL 96577, at *3 (D. Mass. Feb. 3, 1988) ("To prevail on its claim under 15 U.S.C. § 1114(1), plaintiff must show that it has a valid federally registered trademark which is being infringed by defendants' use of the same or similar marks in a manner likely to cause confusion.") (citing 15 U.S.C. § 1114(1)(a)).  The relevant criteria are addressed in turn.

### 2.    Functionality

Defendants argue that Plaintiff's trade dress does not merit protection because it is functional.  Plaintiff maintains that agreement with Defendants at this point in the litigation would require the court to contravene the Rule 12(c) standard by drawing inferences against Plaintiff, the non-moving party.  Plaintiff's argument is persuasive.

It is black letter law that only non-functional trade dress is entitled to protection under the Lanham Act.  *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 33 (2001) [hereinafter *TrafFix*]; *Two Pesos, Inc.,* 505 U.S. at 769; *Lund,* 163 F.3d at 36.  The Supreme Court has identified two types of functionality:  utilitarian and aesthetic.  *See TrafFix,* 532 U.S. at 33; *Qualitex,* 514 U.S. at 169-70; *Christian Louboutin SA v. Yves Saint Laurent Am. Holding, Inc.,* 696 F.3d 206, 219 (2d Cir. 2012) ("[T]wo forms of the functionality doctrine are relevant . . . :  'traditional' or 'utilitarian' functionality, and 'aesthetic' functionality.").  "[Utilitarian] functionality is determined by a feature's usefulness . . . ."  *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 858 (7th Cir. 2010).  Aesthetic functionality refers to ornamental or aesthetically pleasing features of a product's appearance.  *See Qualitex*, 514 U.S. at 170; *Christian Louboutin SA*, 696 F.3d at 221-22.  If the elements of a registered mark have either utilitarian or aesthetic functionality, the registration of the trade dress is invalid.  *See TrafFix*, 532 U.S. at 33; *Lund*, 163 F.3d at 36.

16

"The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex*, 514 U.S. at 164.  "The rule against functional features being protected as symbols of origin 'is obviously to prevent the grant of perpetual monopoly by the issuance of a trade-mark in the situation where a patent has either expired, or . . . cannot be granted.'" *Lund,* 163 F.3d at 37 (quoting *Sylvania Elec. Prods., Inc. v. Dura Elec. Lamp Co.,* 247 F.2d 730, 732 (3d Cir. 1957)).  *See Qualitex*, 514 U.S. at 164-65; *Mark Bric Display Corp. v. Joseph Struhl Co.,* No. C.A. 98-532ML, 2003 WL 21696318, at *4 (D.R.I. July 9, 2003) ("If a design is held to be 'functional,' then, absent a valid utility patent, 'copying of the functional features of an unpatented product is lawful.'") (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 441 (2001)).  Because the functionality doctrine aims to prevent one manufacturer from obtaining a monopoly over "a useful product feature," *Qualitex*, 514 U.S. at 164, "[t]he core inquiry into whether trade dress is functional requires examination of the effects that granting protection to a product will have on the ability of others to compete." *Lund*, 163 F.3d at 37.  "Thus, the functionality doctrine marks the boundaries of trade dress protection." *Id.* at 36.

The Lanham Act confers certain procedural advantages on registered and incontestable marks, such as the Mark in the instant case (Dkt. No. 1 ¶¶ 14, 16).  Registration on the principal register is "prima facie evidence of the validity of the registered mark . . . ," 15 U.S.C. § 1115(a),[5] which "entitles the owner to a presumption that its mark is valid." *Wal-Mart Stores,*

---

[5] Section 1115(a) of Title 15 states:

[Evidence of registration] shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the

*Inc.,* 529 U.S. at 209.  *See also* 15 U.S.C. § 1057(b); *Borinquen Biscuit Corp.,* 443 F.3d at 117;

*Solmetex, LLC v. Dentalez, Inc.*, 150 F. Supp. 3d 100, 110 (D. Mass. 2015).  "The effect of

registration under the Lanham Act, therefore, is to shift the burden of proof from the plaintiff,

who in a common law infringement action would have to establish his right to exclusive use, to

the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's

right to such use."  *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir. 1980),

*repudiated on other grounds by Miller Brewing Co. v. Falstaff Brewing Corp.,* 655 F.2d 5 (1st

Cir. 1981), *and abrogated on other grounds by Two Pesos, Inc.,* 505 U.S. at 776.  *See Black Dog

Tavern Co. v. Hall*, 823 F. Supp. 48, 53 (D. Mass. 1993) ("In the context of the present case, the

registration of plaintiff's marks creates a presumption that they are entitled to protection . . . [and]

defendant has failed to overcome the presumption . . . .").  *Contrast* 15 U.S.C. § 1125(a)(3) ("In a

civil action for trade dress infringement under this chapter for *trade dress not registered on the

principal register*, the person who asserts trade dress protection has the burden of proving that

the matter sought to be protected is not functional.") (emphasis added).  Moreover, "[i]f the

registered mark has become incontestable through the owner's compliance with [the

requirements of § 1065], the presumption [of the mark's validity] is conclusive." [6]  *Borinquen*

---

registered mark in commerce on or in connection with the goods or services specified in
the registration subject to any conditions or limitations stated therein, but shall not
preclude another person from proving any legal or equitable defense or defect . . . .

15 U.S.C. § 1115(a).

[6] Incontestable status is conferred if an affidavit filed with the USPTO establishes that:   a mark
has been registered and "has been in continuous use for five consecutive years and is still used in
commerce;" there has been no final adverse decision to the claim of ownership or right to
registration; and no proceedings involving such rights are pending in the USPTO.  15 U.S.C. §
1065.

*Biscuit Corp.*, 443 F.3d at 117.  *See* 15 U.S.C. § 1115(b).[7]  The Act nonetheless permits an

incontestable mark to be challenged on the ground that the mark is functional.  *See* 15 U.S.C. §

1115(b)(8).  "Although the Court of Appeals for the First Circuit has never expressly determined

who, precisely, bears the burden of persuasion (or what that burden is) when an incontestable

mark is challenged . . . ," *Hasbro, Inc. v. MGA Entm't, Inc.*, 497 F. Supp. 2d 337, 342 (D.R.I.

2007), in First Circuit cases in which the mark is registered but contestable, the court has

indicated that the alleged infringer has the burden to prove the invalidity of the mark by a

preponderance of the evidence.  *See, e.g., Keebler Co.*, 624 F.2d at 373 ("A defendant may

satisfy this burden of proof with respect to the specific defect he alleges in plaintiff's registration

by a preponderance of the evidence.").  Courts in several other circuits that have weighed in on

the question of the burden of proof where a mark is registered and incontestable have placed the

burden of establishing a defense enumerated in § 1115(b) on the party challenging the mark.  *See*

*Ga.-Pacific Consumer Prods. LP v. Kimberly-Clark, Corp.*, 647 F.3d 723, 727-28 (7th Cir. 2011)

(defendants proved that the plaintiff's registered and incontestable designs were functional based

on their utility patents); *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072

(9th Cir. 2006) ("registered and incontestable [marks] are . . . presumed to be valid, distinctive

---

[7] Section 1115(b) of Title 15 says:

> To the extent that the right to use the registered mark has become incontestable under
> section 1065 of this title, the registration shall be conclusive evidence of the validity of
> the registered mark and of the registration of the mark, of the registrant's ownership of
> the mark, and of the registrant's exclusive right to use the registered mark in commerce. .
> . . Such conclusive evidence of the right to use the registered mark shall be subject to
> proof of infringement as defined in section 1114 of this title, and shall be subject to the
> following defenses or defects: . . . (8) That the mark is functional.

15 U.S.C. § 1115(b).

and non-functional" and the alleged infringer has the burden of showing functionality) (citing *Aromatique, Inc.,* 28 F.3d at 868–69); *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 258 (S.D.N.Y. 2016), *aff'd,* 699 F. App'x 93 (2d Cir. 2017) ("When a trademark owner sues for infringement of a registered and incontestable mark, the infringer bears the burden to rebut the presumption of the mark's protectability by a preponderance of the evidence."); *PGI Polymer, Inc. v. Church & Dwight Co.,* No. 3:15-cv-00214-FDW-DSC, 2015 WL 5920013, at *3 (W.D.N.C. Oct. 9, 2015) (defendants bore the burden of overcoming the presumption of functionality of plaintiff's registered and incontestable mark); *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 684 (W.D. Ky. 2010), *aff'd,* 679 F.3d 410 (6th Cir. 2012) ("Because the mark is incontestable, [d]efendants bear the burden of proving [it is functional].").

Irrespective of the allocation of the burden of proof, the short answer to Defendants' arguments in favor of dismissal based on functionality is that "[c]ourts have consistently held that '[f]unctionality is a question of fact,'" *Fritz, DMA, Inc. v. Arthur D. Little, Inc.*, 944 F. Supp. 95, 102 (D. Mass. 1996) (second alteration in original) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987)), and Defendants have not made a sufficient showing here to establish functionality as a matter of law under either branch of the functionality doctrine.  *See Gurglepot, Inc.,* 153 F. Supp. 3d at 450 (alleged trademark infringer was not entitled to dismissal of Lanham Act claims that presented questions of fact); *see also Bern Unlimited, Inc. v. Burton Corp.*, Civil Action No. 11-12278-FDS, 2013 WL 2149674, at *3 (D. Mass. May 15, 2013) ("Functionality is a question of fact that depends on the totality of the evidence.").

      a.     Utilitarian Functionality

Courts have described elements of a product's design as functional in the utilitarian sense "'if [they are] essential to the use or purpose of the article or if [they] affect[] the cost or quality of the article.'"  *Qualitex*, 514 U.S. at 165 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10 (1982)).  *See Jay Franco & Sons, Inc.*, 615 F.3d at 857 ("[I]f a design enables a product to operate, or improves on a substitute design in some way (such as by making the product cheaper, faster, lighter, or stronger), then the design cannot be trademarked; it is functional because consumers would pay to have it rather than be indifferent toward or pay to avoid it.").  The following factors have been considered in evaluating a design's utilitarian functionality:  (1) whether there is "an expired utility patent which disclosed the utilitarian advantage of the design sought to be registered as a trademark . . . ;" (2) whether "the originator of the design touts its utilitarian advantages through advertising;" (3) whether alternative designs for the same product are available; and (4) whether "a particular design results from a comparatively simple or cheap method of manufacturing the article."  *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41 (C.C.P.A. 1982).  *See Bern Unlimited, Inc.*, 2013 WL 2149674, at *3 (recognizing the *Morton-Norwich* factors in assessing utilitarian functionality). The fact that some elements of the design are necessary to the product's use or purpose does not necessarily make the design functional.  "[A] combination of functional elements may itself be entitled to trade dress protection."  *Yankee Candle Co.*, 259 F.3d at 39 n.8.  If a design's elements are determined to have utilitarian functionality, the product is not entitled to trademark protection and the analysis ends.  *See TrafFix*, 532 U.S. at 33 ("Where the design is functional under the *Inwood* formulation there is no need to proceed further to consider if there is a competitive necessity for the feature.").

21

Consideration of the *Morton-Norwich* factors defeats Defendants' suggestion that the Sugarhill Jug's trade dress has utilitarian functionality.  In fact, Defendants did not vigorously contest the jug's design's utilitarian non-functionality at the hearing on Defendants' motion.  Absent from the record is evidence that:  Plaintiffs held a utility patent for the design; advertising highlighted the jug's utilitarian qualities; or the Sugarhill Jug's design was the most economically feasible.  *See In re Morton-Norwich Prods., Inc.*, 671 F.2d at 1340-41.

Regarding the *Morton-Norwich* factor that requires an assessment of the availability of alternative designs, an examination of the overall design of the Sugarhill Jug Mark and its elements refutes Defendants' claims that it is functional under the utilitarian test and that Plaintiffs are attempting to acquire a monopoly on the manufacture of blow-molded plastic maple syrup jugs (Dkt. No. 47 at 6).  The Sugarhill Jug is a maple syrup container (*see* Exhibit A).  *See In re Morton-Norwich Prods., Inc.*, 671 F.2d at 1342 ("[A] molded plastic bottle can have an infinite variety of forms or designs and still function to hold liquid.  No one form is necessary or appears to be 'superior.'").  The jug's design Mark includes the shapes and locations of the shoulders, neck, and top (*see* Exhibit A).  The top is comprised of the mouth of the jug with a handle on one side and a distinct protrusion, which appears to be a spout, opposite the handle (*id.*).  Plaintiff's opposition includes a photograph of a bird's-eye-view of the top of the Sugarhill Jug showing the protrusion in relation to the jug's mouth, which is a circular opening (Dkt. No. 53 at 10).  A solid piece of plastic juts out from the side of the mouth (*id.*).  When the circular cap is on the jug, the protrusion is directly underneath it (*see* Exhibits A & C).  The record is devoid of evidence showing that the protrusion actually "plays any functional role" when syrup is poured (hereinafter the protrusion will be referenced as "the faux spout") (Dkt. No.

22

53 at 10, 17 n.11). Instead, "it is merely an ornamental, incidental, or arbitrary aspect of the device." *TrafFix*, 532 U.S. at 30.

There is no evidence at this stage of the litigation that the Sugarhill Jug's design elements must be copied by competitors in order for their jugs to function on a par with Plaintiff's.[8]  *See TrafFix,* 532 U.S. at 30 (a functional feature is "necessary to the operation" of the product or device); *W.T. Rogers Co. v. Keene*, 778 F.2d 334, 342-43 (7th Cir. 1985) ("The hexagonal shape of the end panel [of the plastic stacking office tray] does nothing to enhance the tray's utility in holding papers; the shape is as irrelevant to that function as the fluting in a column is irrelevant to the column's function of holding up the roof."); *Vuitton et Fils SA v. J. Young Enters., Inc.*, 644 F.2d 769, 776-77 (9th Cir. 1981) ("Vuitton luggage without the distinctive trademark would still be the same luggage.  It would carry the same number of items, last just as long, and be just as serviceable.").  Consequently, Defendants have failed to rebut the presumption that Plaintiffs have plausibly alleged a non-functional Mark.  *Contrast Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603-05 & n.2 (9th Cir. 2003) (summary judgment was granted where the defendant rebutted the presumption that the plaintiff's registered bottle design was non-functional based on plaintiff's advertising, which "tout[ed] its bottle's utilitarian features," manufacturing considerations, which mandated the bottle's design, and the design's utilitarian advantage in its "claimed distinctiveness" -- the "grip area" – which made it

---

[8] Defendants' statement in support of its argument for utilitarian functionality -- that "[t]he protrusion near the top of the bottle is functional because it serves to *appear* as a pouring spout and helps to direct the outflow of the jug's contents" – is based on comments in customers' letters that were submitted to the USPTO to support Plaintiff's contention that its jug design was distinctive (Dkt. No. 47 at 18, citing Dkt. No. 23 [counterclaim] ¶ 28) (emphasis added). Defendants' assertion that the protrusion "appears" to be a spout is consistent with Plaintiff's position that the protrusion is decorative and not necessary to the jug's function and inconsistent with Defendants' claim that the protrusion "helps to direct the flow of the jug's contents."

"easier to hold than other bottles"); *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.,* 626 F.2d 193, 195 (1st Cir. 1980) (the distinctive two-tier design of a woodstove was deemed functional because its design improved the essential operation of the stove in three respects and advertising pointed out the utilitarian advantages of the design features).

The determination that Plaintiff's Mark is non-functional in the utilitarian sense is further supported by the absence of evidence showing that Plaintiff's exclusive use of its trade dress for almost three decades has hindered competition.  Plaintiff's trademark application demonstrated that alternative designs for maple syrup jugs were available (Dkt. No. 48-3 at 31; Dkt. No. 48-4 at 6, 40).  *See Serv. Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1124 (7th Cir. 1988) (affirming the allowance of a permanent injunction where "[the defendant] could have adopted other functional features to distinguish its product from the [plaintiff's beverage] server.  It took the easier route by copying the exterior appearance of [the plaintiff's] design . . . ."); *In re Morton-Norwich Prods., Inc.*, 671 F.2d at 1342-43 (the design of a plastic spray bottle was not essential to its purpose and "allowing appellant to exclude others . . . from using this trade dress will [not] hinder competition or impinge upon the rights of others to compete effectively in the sale of [similar] goods . . . "); *Essie Cosmetics, Ltd. v. Dae Do Int'l, Ltd.*, 808 F. Supp. 952, 958 (E.D.N.Y. 1992) ("If the same function can be performed by a [nail polish] bottle and cap of a different shape with no substantial sacrifice, there is no need to copy trade dress."); *Sundor Brands, Inc. v. Borden, Inc.*, 653 F. Supp. 86, 92 (M.D. Fla. 1986) ("Plaintiff's bottle design is only incidentally functional to contain liquids.  No competitor, with the exception of defendant, has found it necessary to simulate plaintiff's bottle design in order to 'compete effectively.' Accordingly, this Court finds that the functionality of plaintiff's bottle configuration does not render it unprotectable under the trademark laws.").  In addition, Plaintiff's Mark's incontestable

status indicates that "there has been no final decision adverse to [Plaintiff's] claim of ownership of [its] mark for [its] goods or services, or to [Plaintiff's] right to register the same or to keep the same on the register;" and "there is no proceeding involving [Plaintiff's] rights pending in the [USPTO] or in a court and not finally disposed of . . . ."  15 U.S.C 1065(1), (2).

In the cases cited by Defendants, the designs that were found to be functional were either necessary to the purpose of the product or more economical to produce and, thus, effective competition would have been hindered if one manufacturer was afforded exclusive use.  *See, e.g., Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 519 (10th Cir. 1987) ("If [a particular identifying design or feature] must be slavishly copied in order to have an equally functional product, then the feature is not entitled to protection."); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1382-83 (9th Cir. 1987) (where parties agreed that the shape of the antifreeze container was functional, the court denied protection to the color yellow for the jug because doing so "would deplete a primary color available to competitors and deprive them of a competitive need."); *Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, Case No. 16-CV-2290-DDG-KGG, 2016 WL 6093778, at *7 (D. Kan. Oct. 19, 2016) ("the identified features [of plaintiff's trade dress] are essential to the use of the [pet] bed.").[9]

In sum, Defendants have failed to rebut the presumption that the Sugarhill Jug design is non-functional in the utilitarian sense.

      b.    Aesthetic Functionality

---

[9] Defendants also rely on *In re McIlhenny Co.*, 278 F.2d 953 (C.C.P.A. 1960), in which the court affirmed the TTAB's denial of registration of a pepper sauce bottle, finding that "[t]he bottle and its closure have no distinctive features upon which this court could predicate a conclusion that the device has trademark significance per se."  *Id.* at 988-89.  Because the court addressed the distinctiveness requirement for receiving trademark protection and not the non-functional requirement, *In re McIlhenny Co.* is inapposite.

Because Defendants have failed to demonstrate the Sugarhill Jug design's utilitarian functionality, the court's analysis proceeds to an assessment of its aesthetic functionality. *See TrafFix*, 532 U.S. at 33 (if the design is functional under the *Inwood* definition of utilitarian functionality, there is no need to consider aesthetic functionality). Focusing on the faux spout, which Plaintiff alleges Defendants have copied, Defendants argue that the protected elements of Plaintiff's Sugarhill Jug design are aesthetically functional because they constitute the features that consumers want to purchase and "'there are no alternative designs capable of satisfying the aesthetic desires of the[] prospective purchasers.'" (Dkt. No. 47 at 19) (citation omitted). Plaintiff persuasively counters that whether or not equivalent alternative designs are available cannot be resolved on the present record because it presents a "highly fact-intensive inquiry" requiring discovery (Dkt. No. 53 at 18-19).

"When aesthetic considerations play an important role in the purchasing decisions of prospective consumers, a design feature that substantially contributes to the aesthetic appeal of a product may qualify as 'functional.'" RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 17 cmt. c (AM. LAW INST. 1995). "Under the theory of 'aesthetic functionality' many visually attractive and aesthetically pleasing designs are categorized as 'functional' and hence free for all to copy and imitate." 1 J. McCarthy *McCarthy on Trademarks and Unfair Competition* § 7:79 (5th ed. 2018). "A design is functional because of its aesthetic value [however,] only if it confers a significant benefit that cannot practically be duplicated by the use of alternative designs." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 17 cmt. c. Although the definition of aesthetic functionality is more nebulous than the definition of utilitarian functionality, the court's ultimate focus in determining functionality is similar; that is, whether the "'exclusive use of the [aesthetically functional feature] would put competitors at a significant non-reputation-related

disadvantage.'" *TrafFix,* 532 U.S. at 32 (quoting *Qualitex,* 514 U.S. at 165). *See Qualitex*, 514

U.S. at 170 (aesthetic functionality concerns whether a design's "use as a mark would permit one

competitor (or a group) to interfere with legitimate (nontrademark-related) competition through

actual or potential exclusive use of an important product ingredient."); *Christian Louboutin SA*,

696 F.3d at 222 ("[A] mark is aesthetically functional, and therefore ineligible for protection

under the Lanham Act, where protection of the mark *significantly* undermines competitors'

ability to compete in the relevant market."); *Jay Franco & Sons, Inc.,* 615 F.3d at 860 ("Granting

a producer the exclusive use of a basic element of design (shape, material, color, and so forth)

impoverishes other designers' palettes."); *Lund*, 163 F.3d 37.

  Viewing the facts recited in the complaint in the light most favorable to Plaintiff and

drawing all reasonable inferences in its favor, Defendants have failed to overcome the

presumption that competition will not be stifled by permitting Plaintiff the exclusive use of its

registered Sugarhill Jug design Mark.  Defendants' aesthetic functionality argument relies on

excerpts from the twenty-seven letters from Plaintiff's maple syrup producer customers (Dkt. No.

47 at 11-13).  Plaintiff submitted the letters to the USPTO almost three decades ago to

demonstrate that its jug design was distinctive and, therefore, entitled to registration on the

Principal Register (Dkt. No. 48-3 at 32).  Defendants posit that these letters establish that the

maple syrup producers bought the Sugarhill Jugs because they – or their clientele, the ultimate

syrup consumers – were attracted to their resemblance to a porcelain pitcher (Dkt. No. 47 at 20).

According to Defendants, the letters establish that the Sugarhill Jug's appeal to consumers gives

Plaintiff a competitive advantage, making the jugs aesthetically functional and not entitled to

trademark protection (Dkt. No. 47 at 20; Dkt. No. 57 at 7-8).  However, Defendants' argument is

flawed in two respects:  the purpose of Plaintiff's customers' letters was to prove that the trade

dress had secondary meaning; and, at the pleading stage, there is no evidence that Plaintiff's

monopoly over its trade dress significantly disadvantages competitors.

First, Plaintiff's established customers submitted the letters upon which Defendants rely.

Because there is no evidence from consumer surveys, there is no proof that Plaintiff's customers'

views of the Sugarhill Jug's design were shared with the universe of consumers of blow-molded

plastic maple syrup jugs.  Further, Plaintiff did not submit its customers' letters to the USPTO in

1989 to demonstrate that the Sugarhill Jug design was non-functional (Dkt. No. 48-3 at 32).

Instead, Plaintiff solicited the letters in response to the USPTO examining attorney's initial

determination that Plaintiff's proposed mark was not distinctive and, therefore, not entitled to

trademark protection (Dkt. No. 48-3 at 30, 32-33; Dkt. No. 48-4 at 45).[10]

Second, the ultimate determination of aesthetic functionality concerns the question of

whether or not alternative attractive designs for the same product exist.  *See Brunswick Corp.,*

832 F.2d at 519 ("The decision [as to whether a design is aesthetically functional] should . . . rest

---

[10]  "It is common ground that, in order to be eligible for trademark protection, a mark must qualify as distinctive." *Borinquen Biscuit Corp.*, 443 F.3d at 116 (citing *Two Pesos, Inc.,* 505 U.S. at 769).  "Distinctiveness may be either 'inherent,' that is, the 'intrinsic nature '[of the trade dress] serves to identify a particular source,' or 'acquired,' i.e., the trade dress has acquired a 'secondary meaning' whereby the public views its 'primary significance . . . as identify[ing] the source of the product rather than the product itself.'" *Yankee Candle Co.*, 259 F.3d at 38 (alterations in original) (citations omitted).  In contrast to a name or distinctive logo, a product's design, such as the one at issue here, can never be inherently distinctive. *See Wal-Mart Stores, Inc.*, 529 U.S. at 216.  "[T]herefore [a design is] protectible only upon a showing of secondary meaning." *Id. See Jay Franco & Sons, Inc.,* 615 F.3d at 857 ("'[S]econdary meaning' [is] a link in the minds of consumers between the marked item and its source."); *TEC Eng'g Corp. v. Budget Molders Supply, Inc.*, 927 F. Supp. 528, 533–34 (D. Mass. 1996) ("Secondary meaning is established where the plaintiff shows that a 'significant quantity of the consuming public understand [the trade dress of a product] as referring exclusively' to the plaintiff.") (alteration in original) (quoting *President & Trs. of Colby Coll. v. Colby Coll. – N. H.,* 508 F.2d 804, 807 (1st Cir. 1975)).  Defendants do not challenge the element of distinctiveness and purchasers who submitted letters to the USPTO associated the design features with the Sugarhill Jug (Dkt. No. 48-4 at 8-34).

on whether alternative appealing designs or presentations of the product can be developed.").

Put another way:  would manufacturers of plastic maple syrup jugs that are prohibited from using

Plaintiff's Mark be at a competitive disadvantage in the marketplace?  *See Lund*, 163 F.3d at 37.

"If effective competition is possible without copying [the attractive design] feature, then, by

analogy to the distinction between arbitrary and generic brand names, it is not a functional

feature."  *W.T. Rogers Co., Inc.*, 778 F.2d at 343.  Because the determination of whether or not

the exclusive use of a design stifles competition requires factual development, it is not grounds

for dismissal of the complaint under Rule 12(c).  *See Fiji Water Co., LLC v. Fiji Mineral Water*

*USA, LLC*, 741 F. Supp. 2d 1165, 1174 (C.D. Cal. 2010) ("FIJI has also provided substantial

evidence that 'commercially feasible alternative configurations exist' such that 'providing

trademark protection to one design would not hinder competition.'") (citation omitted);

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 17 cmt. c ("Because of the difficulties

inherent in evaluating the aesthetic superiority of a particular design, a finding of aesthetic

functionality ordinarily will be made only when objective evidence indicates a lack of adequate

alternative designs.").

It is a question of fact whether registration of Plaintiff's Mark, which includes the

conspicuous ornamental faux spout, restricts competitors' design options (Dkt. No. 47 at 20).  As

discussed earlier, Plaintiff identified Bacon and Kress as competitors in its application to the

USPTO (Dkt. No. 48-3 at 31).  Caps, necks, shoulders, mouths, and handles are common

features of Plaintiff's, Defendants', Bacon's, and Kress's jugs, although these design elements

differ in each manufacturer's jugs (Exhibits A, B & C; Dkt. No. 47 at 23; Dkt. No. 48-4 at 6, 40).

Bacon's and Kress' jugs do not have obvious faux spouts like Plaintiff's Sugarhill Jugs and

Defendants' allegedly infringing jugs (*id.*).  *See LeSportsac, Inc. v. K mart Corp.*, 754 F.2d 71,

77 (2d Cir. 1985) ("K mart's ability to compete is not unduly hindered by the determination that LeSportsac's particular configuration of design features is nonfunctional and therefore eligible for protection."); *Carillon Imps. v. Frank Pesce Grp.*, 913 F. Supp. 1559, 1564 (S.D. Fla. 1996), *aff'd sub nom. Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125 (11th Cir. 1997) ("Although, the Stolichnaya Cristall bottle alone is quintessentially functional in its common, wine bottle shape, the combination of elements comprising Stolichnaya Cristall's trade dress is not merely functional.  Among all the bottle shapes, labels, and color schemes available to a producer distributor, the selection of a narrow, clear glass, Russian wine bottle, sealed in black neck wrapping and labeled in black with white, gold, and red lettering, is decidedly non-functional.").  *Contrast Jay Franco & Sons, Inc.*, 615 F.3d at 861 (plaintiff's circular beach towel was aesthetically functional because "[t]here are only so many geometric shapes; few are both attractive and simple enough to fabricate cheaply."); *Inspired by Design*, LLC, 2016 WL 6093778, at *7 ("The injunctive relief plaintiff seeks, if granted, would thwart competition and encroach on others' rights by limiting the type of pet bed designs that defendants – and perhaps others – could sell to customers."); *Vital Pharms., Inc. v. Am. Body Bldg. Prods., LLC*, 511 F. Supp. 2d 1303, 1313 (S.D. Fla. 2007) (plaintiff's trade dress -- its 8 ounce bottles with vertical lettering on the neck -- was aesthetically functional because there were no other options for lettering which would allow "a consumer to see the name from a single angle, rather than by rotating the product" and giving plaintiff the exclusive use of this design would significantly hinder competition).

A case relied on by Defendants, *Bonazoli v. RSVP Int'l, Inc.*, 353 F. Supp. 2d 218 (D.R.I. 2005), does not compel a different result.  Plaintiff Bonazoli "created a design for measuring spoons . . . in which the bowl of each spoon was made in the shape of a heart and the handle in

the shape of an arrow shaft." *Id.* at 220.  After Defendants produced a version of the plaintiff's spoons at a lower price, the plaintiff sued for infringement.  *Id.*  The court granted summary judgment in favor of the defendants based on the spoons' aesthetic functionality.  *Id.* at 227.  The court considered the defendants' evidence "that the heart-shaped design of plaintiff's measuring spoons is functional in the sense that its appeal produces demand."  *Id.*  The plaintiff, on the other hand, failed to produce sufficient evidence to show that "the product design serves the primary non-functional purpose of identifying her as the source of the product."  *Id.*  Based on a sufficient evidentiary record, the court concluded that protection of the plaintiff's trade dress would stifle competition because there was no alternative to the heart-shaped spoon design.  *Id.* Here, on the other hand, some of the letters from Plaintiff's customers demonstrate that, in 1989, they identified the Sugarhill Jug design with Plaintiff and it remains to be seen whether evidence will show that effective competition has been hindered by permitting Plaintiff the exclusive use of its jug design.

Reading the complaint and supporting materials indulgently at this stage of the litigation, Defendants have failed to sustain their burden of demonstrating that Plaintiff's registered mark is functional and, therefore, not entitled to trademark protection.  Although Defendants may ultimately prevail on the question of aesthetic functionality, it will require the evaluation of evidence demonstrating the impact of Plaintiff's Mark on effective competition, such as, for example, a comparison of Plaintiff's sales figures with those of other sellers in the marketplace. Because the court is constrained to view the complaint's allegations in the light most favorable to Plaintiff and to draw all reasonable inferences in its favor, the court should conclude that, at this point, Defendants have failed to rebut the presumption that Plaintiff's registered trade dress is aesthetically non-functional.  *See TrafFix*, 532 U.S. at 32 (quoting *Qualitex*, 514 U.S. at 165).

3.      Likelihood of Confusion

Even if Plaintiff's Mark is not functional, its infringement claims still fail if there is no likelihood of confusion.  *See Two Pesos, Inc.,* 505 U.S. at 769.  Defendants contend that Plaintiff fails to state plausible claims because customers are not likely to confuse its new jugs with the Sugarhill Jug.  Because Defendants' new jug design is not before the court on the motion for judgment on the pleadings, the following analysis concerning the likelihood of confusion applies to Defendants' old jug design, which is the subject of Plaintiff's complaint.

"Not all conceivable forms of confusion are relevant to trademark infringement." *Dorpan, SL*, 728 F.3d at 64.  "Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner." *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.,* 376 F.3d 8, 10 (1st Cir. 2004).  The First Circuit has identified the following eight factors to be weighed when evaluating the likelihood of confusion:

> (1) the similarity of the marks [trade dress]; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.

*McNeil-PPC, Inc. v. Merisant Co.*, Civil No. 04-1090 (JAG), 2004 WL 3316380, at *15–16 (D.P.R. July 29, 2004).  *See Lund*, 163 F.3d at 43; *Bos. Athletic Ass'n v. Sullivan*, 867 F.2d 22, 29 (1st Cir. 1989).  "No one factor is necessarily determinative, but each must be considered." *Boston Athletic Ass'n*, 867 F.2d at 29 (quoting *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987)).  "The application of those factors to the record is a highly fact-intensive inquiry." *The Shell Co. (P.R.) Ltd. v. Los Frailes Serv. Station, Inc.*, 605 F.3d 10, 22 (1st Cir. 2010).  *See Visible Sys. Corp. v. Unisys Corp.,* 551 F.3d 65, 73–74 (1st Cir. 2008);

*Borinquen Biscuit Corp.*, 443 F.3d at 120.   "[T]he purpose of the inquiry is simply to determine whether 'the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'"  *The Shell Co. (P.R.) Ltd.*, 605 F.3d at 22 (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.,* 103 F.3d 196, 201 (1st Cir. 1996) [hereinafter *IAM*]).   Defendants face a substantial challenge in advancing this contention at this stage of the litigation.   "Because the likelihood of confusion analysis is a particularly fact-intensive one, resolving this issue [even] on summary judgment is disfavored."  *Dorpan, S.L.,* 728 F.3d at 66 (citing *Bos. Athletic Ass'n*, 867 F.2d at 24).

a.     The similarity of the trade dress

The similarity factor "is determined on the basis of the total effect of the designation, rather than a comparison of individual features."  *Pignons SA de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981).   Plaintiff's Sugarhill Jugs and Defendants' old jugs have the distinctive faux spouts, which distinguish them from the depictions of their competitors' jugs that are contained in the record (Exhibit A; Dkt. No. 1 ¶¶ 21, 22; Dkt. No. 1-2 at 3; Dkt. No. 47 at 23; Dkt. No. 48-4 at 6, 40).   The lengths of the faux spouts' protrusions on Plaintiff's and Defendants' old jugs appear to be comparable (*id.*).   *See Bos. Duck Tours LP v. Super Duck Tours, LLC*, 531 F.3d 1, 34 (1st Cir. 2008) (DiClerico, J., concurring) ("[I]f the most dominant features of both marks is the same or similar, then that similarity may cause confusion.").   Based on Defendants' 2017 catalog pages depicting Plaintiff's Sugarhill Jugs and Defendants' old jugs (Exhibit C), the jugs' overall appearances are substantially similar (Dkt. No. 1¶¶ 21, 22; Dkt. No. 1-2 at 3).   *See Paddington Corp. v. Attiki Imp. & Distribs., Inc.*, 996 F.2d 577, 586 (2d Cir. 1993) ("More significant than the striking similarities in various details are the

33

dresses' similarity in overall appearance.").  Whether or not these designs are sufficiently different to avoid consumer confusion is a question of fact that cannot be resolved on the record before the court.

Defendants contend that prospective purchasers can distinguish the products by the manufacturers' word marks that are displayed in catalogs and on the bottoms of the jugs (Dkt. No. 47 at 24).  "[I]n certain circumstances otherwise similar marks are not likely to be confused if they are used in conjunction with clearly displayed names, logos or other source-identifying designations of the manufacturer."  *IAM,* 103 F.3d at 204; *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1205 (1st Cir. 1983) ("It is well settled that under certain circumstances otherwise similar marks are not likely to be confused where used in conjunction with the clearly displayed name and/or logo of the manufacturer.").  Defendants' catalog page that is attached to the complaint (Exhibit C) depicts two groups of jugs that appear to have substantially similar shapes and labels (Dkt. No. 1 ¶ 22; Dkt. No. 1-2 at 3).  Plaintiff's logo is the only one that appears on the page (*id.*).  The price lists for Plaintiff's containers identify them as "Sugarhill" but the price lists for Defendants' jugs on the top of the page do not identify their source (*id.*).  Insofar as is established by the pleadings, both groups of jugs appear to be the same and Defendants' jugs are not clearly identified as theirs.  Plaintiff has adequately alleged that consumers could be confused.[11]  In addition, there is no indication that Defendants' old jugs displayed source identifying information on the bottom or in any other location.  *See Maple Grove Farms of Vt., Inc.*, 974 F. Supp. at 96.  Consequently, at this point in the litigation, this factor weighs in favor of finding a likelihood of confusion.

---

[11] The court disagrees with Defendants' contention that the catalog page "displays the name of each jug's manufacturer" (Dkt. No. 57 at 4).

      b.     The similarity of the goods

Both parties manufacture and sell containers for maple syrup (Dkt. No. 1 ¶¶ 9, 12, 22).

*See id.* at 95.  In fact, the complaint alleges that Defendants sold Plaintiff's Sugarhill Jugs (Dkt.

No. 1 ¶¶ 18, 19).  Consequently, based on the pleadings, this factor leans in favor of Plaintiff's

claim that consumers are likely to be confused.  *See TriMark USA, Inc. v. Performance Food*

*Grp. Co.*, 667 F. Supp. 2d 155, 165 (D. Mass. 2009) (fact that competitors sold "identical

products" supported the finding of a likelihood of confusion).

      c.     The channels of trade; the advertising audience; and the prospective
               purchasers

These factors are analyzed as a group because they "tend to be interrelated."  *Beacon*

*Mut. Ins. Co.,* 376 F.3d at 19.  *See Equine Techs., Inc. v. Equitechnology, Inc.,* 68 F.3d 542, 546

n.5 (1st Cir. 1995) (recognizing the analysis of the three factors together as "custom in this

circuit").  It is undisputed that both parties' jugs are "sold to the same customers through the

same channels of trade," are advertised in industry publications, and marketed through catalogs

(Dkt. No. 1 ¶¶ 9, 22; Dkt. No. 1-2; Dkt. No. 1-3; Dkt. No. 23 at 9 ¶ 2, at 11 ¶ 16; Dkt. No. 29 ¶¶

2, 16; Dkt. No. 57 at 8; Dkt. No. 58-3 at 2, 76).  *See Butcher Co., Inc. v. Bouthot,* 124 F. Supp.

2d 750, 756–57 (D. Me. 2001) ("Channels of trade refer to the distribution methods and markets

in which the products are sold.").

"[M]aple syrup farmers" purchase the parties' jugs (Dkt. No. 1 ¶ 9).  Defendants contend

that the parties' customers are "highly specialized, sophisticated purchasers who engage in

careful scrutiny before their initial purchase" and, therefore, would not be confused as to the

source of the jugs that they purchase (Dkt. No. 47 at 23).  *See Pub. Impact, LLC v. Bos.*

*Consulting Grp., Inc.*, 169 F. Supp. 3d 278, 294 (D. Mass. 2016) ("The likelihood of confusion

may be substantially reduced when the relevant buyer class is composed of sophisticated

professional or commercial purchasers of goods and services.") (citing *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 888 F. Supp. 192, 202 (D. Me. 1995), *order aff'd*, 97 F.3d 1504 (1st Cir. 1996)).  "'Sophisticated consumers' are typically those consumers who would exercise greater care in purchasing the parties' services, and who would be less likely to be confused by the parties' advertising or similarities in services." *Bayshore Grp. Ltd. v. Bay Shore Seafood Brokers, Inc.*, 762 F. Supp. 404, 413 (D. Mass. 1991) (quoting *Astra Pharm. Prods., Inc.,* 718 F.2d at 1206).  Plaintiff persuasively counters that Defendants' claim that the prospective purchasers are "sophisticated" consumers who would "carefully scrutinize any advertisements [or products]" is a question of fact that cannot be resolved at this point (Dkt. No. 1 ¶ 9; Dkt. No. 53 at 22).  Because "all business customers, as opposed to individual customers, are [not] sophisticated customers as a matter of law," *TriMark USA, Inc.*, 667 F. Supp. 2d at 166, the court should not conclude at this stage that all customers are sophisticated and would not be confused. Rather, "the fact that the parties share channels of trade, advertising channels and prospective purchasers all weigh in favor of a finding of a likelihood of confusion between the marks." *Id.* at 167.  *See Borinquen Biscuit Corp.*, 443 F.3d at 120.

> d.  Evidence of actual confusion

"Plaintiff need not show actual confusion to prevail on its claim of service mark infringement; mere likelihood of confusion is sufficient." *Calamari Fisheries, Inc.*, 698 F. Supp. at 1011 (citing *Volkswagenwerk,* 814 F.2d at 818).  Likelihood of confusion is a reasonable inference based on the pleadings.

> e.  Defendants' intent in using the mark

This factor weighs in favor of Plaintiff who alleges that "Defendants engaged in a deliberate and willful scheme to trade upon and misappropriate for themselves the vast goodwill

represented and symbolized by the Sugarhill Jug Design Trademark, by adopting and using in commerce the accused trademark and offering products bearing the . . . trademark to parties that have previously purchased Plaintiff's goods" (Dkt. No. 1 ¶ 20). In support of this claim, Plaintiff alleged that Defendants provided Salbro with specifications for manufacturing the "Sugarhill Jug design branded jugs" (Dkt. No. 1 ¶18). Plaintiff further alleged that Defendants' intent to copy the Sugarhill Jug mark was evinced by Defendants' catalog which depicted the jugs side-by-side with the same labels (Exhibit C; Dkt. No. 1 ¶ 22; Dkt. No. 53 at 21-22). Defendants do not dispute that, under the evidentiary standard applied to their motion, it is reasonable to infer that they intended to copy Plaintiff's trade dress (Dkt. No. 57 at 8). *See Star Fin. Servs., Inc.*, 89 F.3d at 11 ("[e]vidence of bad intent . . . [is] potentially probative of likelihood of confusion . . . [but] 'a finding of good faith is no answer if likelihood of confusion is otherwise established.'") (quoting *President & Trs. of Colby Coll.*, 508 F.2d at 811-12).

f.       Strength of Plaintiff's Mark

"In assessing a mark's strength, the trier of fact considers evidence of the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark." *Id.* Based on the complaint's allegations, there is no dispute that Plaintiff's mark is strong (Dkt. No. 1 ¶¶ 9-14; Dkt. No. 57 at 8). *See Borinquen Biscuit Corp.*, 443 F.3d at 121 (registration of Plaintiff's mark for more than two decades indicates its strength). Consequently, at this stage, the strength of the mark tends to support Plaintiff's claim that consumers' confusion is likely.

g.       Summary of factors

On balance, based on the pleadings, the factors weigh against allowing Defendants' motion to dismiss the complaint based on a conclusion that there is no likelihood of confusion.

*Contrast Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (dismissal of infringement suit was allowed because "the facts [plaintiff] alleged in its complaint, as well as the attached exhibits, demonstrated that there was no likelihood of confusion and that the fair use defense conclusively applied as a matter of law.").

In summary, Defendants have failed to establish as a matter of law that Plaintiff's trade dress is functional or that consumers are not likely to be confused by its old jugs.  Accordingly, the court recommends that Defendants' motion for judgment on the pleadings be denied as to Counts I, II, and III.

      C.      <u>Count IV:  Plaintiff's Unfair Competition Claim under Mass. Gen. Laws ch. 93A</u>

In support of the dismissal of Count IV, which claims that Defendants engaged in unfair methods of competition or unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A, §§ 2, 11, Defendants again rely on their contention that Plaintiff's trade dress is not valid and entitled to protection (Dkt. No. 57 at 1-2 & n.1).  *See Kusan, Inc.,* 1988 WL 96577, at *3 ("To prevail on the merits of its claims of common-law trademark and trade name infringement, unfair competition, unfair methods of competition, and trademark dilution, plaintiff must also prove that it has a valid mark which the defendants have used in a manner likely to cause confusion.").  Because "[t]he standard for trademark infringement under Mass. Gen. Laws ch. 93A § 11 . . . is essentially the same as that under the Lanham Act," *Bos. Granite Exch., Inc. v. Greater Bos. Granite, LLC*, Civil Action No. 11-cv-11898-JLT, 2012 WL 3776449, at *5 (D. Mass. Aug. 29, 2012), and because Plaintiff has alleged plausible claims for relief for infringement under the Lanham Act, the court finds that Plaintiff has set forth a plausible claim for relief under § 93A.  Accordingly, the court recommends that Defendants' motion for judgment on the pleadings on Count IV be denied.

V.   <u>C</u>ONCLUSION

For the above-stated reasons, the undersigned recommends that Defendants' motion for

judgment on the pleadings (Dkt. No. 46) be denied.[12]

Dated:  August 6, 2018                          /s/ Katherine A. Robertson
                                                KATHERINE A. ROBERTSON
                                                UNITED STATES MAGISTRATE JUDGE

---

[12] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.